Good morning, Your Honors. My name is Trent Eckert, and I represent Timothy McLaughlin and others similarly situated. And I request to reserve four minutes for rebuttal. In this case, Your Honors, this is an FDCPA violation arising from false statements that the defendants made in a letter to Mr. McLaughlin in an effort to collect a mortgage debt for Mr. McLaughlin's personal residence. Will you explain for me how the validation procedure under the Act operates or should operate? Yes, Your Honor. The validation procedure, there are a number of cases that explain the validation procedure. It's a statutory procedure implemented to ensure efficiency between creditors and third-party debt collectors so that information can be exchanged. That's its purpose, but how does it unfold? How does it invoke? How does it work? It works in the manner that a debt collector sends a validation letter or any debt collection communication to a debtor, and then the debtor can seek validation if the debtor has reason to believe that there is something inaccurate about the information stated in that letter. Section 1692G specifically states that the debt collector can obtain verification of the debt. I would specifically refer the Court to page 28 of PHS's initial brief in which they cite a case called Lindbergh. It says, there's a block quote there that says under Section 1692G, the debtor bears the responsibility to notify the debt collector of facts which the debt collector would otherwise not be aware. And in this particular case, that clearly doesn't apply because Mr. McLaughlin had no contract with PHS. He didn't have any agreement with PHS with regard to attorney services. He had no reason to know the basis for PHS's legal fees, when those fees would be incurred, how they would be incurred, or to notify the debt collector of facts that PHS would not be aware. So in this particular case, to answer your question, Judge Smith, the mechanics of Section 1692 would be if Mr. McLaughlin knew facts that PHS didn't know, he would have an opportunity to notify PHS. PHS could then reach out to the original creditor and say, okay, can you please verify this for us? And that's a way to keep the cost down so that the system works. But he doesn't have to do that, right? He doesn't have to have new facts. He can just inquire. Like, please provide and verify that all of this is accurate. Or are you saying that this notification, the verification process requires the debtor to say, I have information you're mistaken? Well, but, Judge, that relates to the debt. Section 1692G relates to the debt. And in this particular case, I would agree with that. But the statute relates to the debt, the principal debt. And this case relates to the fees that were added by PHS. So in general terms, that may be the case that a debtor could just unilaterally ask. But this case illustrates why that's not a practical answer. And it also illustrates why it's not a statutory requirement. But do you think it's a statutory requirement even if this was only about the debt? Well, I — To ask for verification before you can file suit, which is what you're outstanding? Is the question essentially about exhaustion? Kind of. Because I just want to make sure I understand what you're saying. You're telling me that you can go through this exercise of asking for verification under the statute about the debt, not all the service fees around its collection. And I think, if I understand your question correctly, I think PHS has cited a number of cases that address that fact, that address obtaining verification of the debt but not obtaining verification of collateral fees added by the third-party debt collector, if that addresses your question. But my question for you is, whether it's about the debt or about the service fees surrounding the debt, is there an obligation under the statute for an individual like your client to ask for verification before filing suit? No. The statute doesn't say that. The statute requires a verification of the debt to ask for verification of the debt. And the Lindbergh case I submit illustrates why. And that's because the debtor would have information that the third-party debt collector would not have. In this situation, PHS was the only one that had information related to its own fees. PHS was the one who alleges that it incurred fees. We now know that PHS did not incur those fees because it said that the fees as of May 18th were 650 for attorney's fees. Those fees were not incurred until almost a month later or two weeks later, whatever it was. But PHS was the only entity that actually knew that fact. Mr. McLaughlin had no way of knowing that. So it would have been a futile exercise from your point of view because he couldn't add anything to the conversation on the subject? Exactly. And PHS, we're operating under a remedial statute that's intended to protect people like Mr. McLaughlin and the other people in the class that we haven't identified yet because we haven't had discovery yet. But all of these people are supposed to be protected. And the goal is to make sure that they're not being solicited by false statements. Under 1692E, the standard is whether the communication is false and misleading or deceptive. And PHS in its papers has emphasized that Mr. McLaughlin has not been deceived. And I would ask that the court kind of focus in on that argument for four reasons. And, well, I don't want to say four, but for a number of reasons. Number one, 1692E includes falsity. And we know in this case that the letter was false. What was the falsity? Well, the falsity was that attorney's fees weren't incurred by May 18th, 2010. Cost of suit weren't incurred by May 18th, 2010. The title costs were overstated by $185. PHS has said that that's a hyper-technical argument, but there are other cases. Was that your initial argument? Well, our argument was... Was that your initial claim as pleaded? Our initial claim as pleaded was that the letter was misleading and it complied with those pleading standards. In what way was it misleading? That it didn't accurately state the amount of fees. One of the factual allegations that we made was that... You were contending that legal services hadn't been performed, that no lawyer was involved with respect to the preparation of that letter. Right. And in connection with that, at that time... Are you still proceeding on the basis that no lawyer was involved? That's not an issue we're presenting on here. All right. So you're not. That claim is gone. Correct. And I want to be very clear to the court that at the time we filed the initial complaint, we didn't have the invoice. So we didn't know that that issue was false. That was information that was wholly within PHS's control and possession. So from a due process standpoint, we provided as much notice as we could. So did I understand your position with respect to the legal fees? Yes. Your position isn't that there's an excess charge here, as I understand it. Your position simply is that as of 5-18 of 2010, the specific amount listed in the letter had not yet been incurred. Correct. Is that right? And... Was it eventually incurred? Well, I believe that an amount was incurred. I don't believe that $650, I believe it was $625 was billed to city mortgage. And in that regard, I would say that the FDCP has a strict liability statute and that PHS selected its own language. So in effect, your theory here with respect to the attorney's fees is that the letter overdisclosed? No. I would direct the Court to two cases, Veach v. Sheeks and Bernstein v. Howe. Both of those cases state that there is a strict obligation for creditors to comply to the letter or to the decimal point with the value of the debt as of a date certain. And the reason for that is because... This isn't the debt. This is a fee now. Right. I mean, you made that distinction in another context a few minutes ago. Correct, Judge. But it is a misrepresentation in connection with an effort to collect the debt. It's a misrepresentation of a fee in connection with an effort to collect the debt. So estimates are off limits from your point of view. It is. And... Is that practical? I'm sorry. Is that practical? Yes. Does it count that a law firm can never, or a debtor, or rather a creditor, can never estimate what fees are as of a particular point in time or on a time continuum? They selected the language. And they're in the business of... Do they have the option to just not set out an amount? Could they put a question mark there? That particular question was addressed specifically in Veach v. Sheeks and Bernstein v. Howell. The Court said that the statute requires strict compliance, and they provided suggested language for debt collection letters as to how... And now, of course, the cases you've cited repeatedly are not cases that are binding on us. But they, I believe, were cited from the Wilbur case that PHS cited in their brief. So they are not binding. That's correct. But I believe that their logic and their observations regarding the statute and strict compliance is correct. No one disputes the policy of the statute here. But the measure of exactitude that's required, especially where an estimate may be the only thing that's possible, is what I'm questioning. Correct. In that regard, I would direct the Court, perhaps, to a decision from Judge Finansky when he was on the District Court bench. It was, I believe, Krzywowski, and I might not be pronouncing the case correctly, v. I.C. Solutions. But in that particular case, I believe, Judge, you mentioned one point that a debt collector made a telephone call instead of sending a letter. And the debt collector relied on that as a defense, saying that there were no other alternatives. And I believe one of your rationales was, well, that's their business. They selected the method of debt collection, and they're responsible for the method of debt collection they selected. In this particular case, I submit that they selected their language. It's a law firm, and they crafted the language that said that debt as of May 18th, 2010 is, and then enumerated those debts. And that should be judged against the standard of the least sophisticated consent. And I understand what the standard is, but just for context and just to be clear, was there any prejudice or damage at all experienced by your client as a consequence of this misestimate? Well, I would say that that's not been borne out by the record, because there's been no discovery on that issue. All right. Thank you. We've already gone over your time, and you do have rebuttal. So we'll have you back on rebuttal, Mr. Rector. Is it Mr. Bart? Yes, Your Honor. Mr. Bart, are you arguing here for what is effectively an exhaustion requirement in your suggestion of the use of the validation procedure? Well, when it comes to the issue of the numbers in the validation procedure itself, yes. In other words, when we say these are the numbers that we're going to be seeking in the forthcoming foreclosure complaint, because that's what it says in this validation notice, if you wish to seek verification, we will provide you with a verification. If you dispute it, no action will be taken against you until we have verified the debt. Is there any language whatsoever in the statute that would suggest that this is a requirement, that is, the essentially exhaustion requirement is uncharacterized? No, Your Honor, there is not. No textual support for a step that you are urging us against the backdrop of what is clearly a remedial statute? Yes, that's correct, Your Honor, except for the fact that it otherwise essentially renders the legislative purpose, the legislative scheme to be irrelevant. The whole purpose of Section 1692G is to allow the debtor to confirm or verify a debt so that they don't go after the wrong person or for the wrong fee. It gives you a chance before there is any debt collection activity, and that's a very key point, which I'll get back to in a second, to resolve the dispute without the need for any further proceedings. And unless the debt collector is allowed to, well, I mean, what the statute does say is that the debt collector is allowed to rely on those numbers. So if they don't contest it, the debt collector is allowed to rely. Now, what does that mean if they can just go and sue? It doesn't mean that the debt is owed, but it means that the debt collector may rely on it. So maybe that is what you were talking about in terms of statutory language, because that particular phrase, that the debt collector may rely on the numbers set forth in the validation notice if there's no proceeding, if there's no objection, means that if you don't object, you can't sue the debt collector. But that's been the subject of judicial interpretation. There's nothing in there specifically that says you can't sue. But the real issue is... That's a rather, I mean, that would be a rather opaque way for Congress to suggest something in the nature of an exhaustion requirement, wouldn't it? I think there are probably other examples where there are equally opaque statutory schemes. But the question is, does the language saying that the debt collector may rely on the figures have any meaning if they don't contest it and then sue? But the statute says that the failure to contest is not deemed an admission to the accuracy. So isn't that something that guides us to know you don't need to do this condition precedent to be able to file suit? No, Your Honor. All that means is that you're not barred from defending if you don't object. You can only sue, but you can't sue. That's correct. That's right. You can't sue for essentially seeking an incorrect fee. It gives you the right... The whole purpose of the statute is to stop abusive collection practices. Exactly. So when a purported debtor gives verification, it's a cool and rough period. It's asking everybody to take a check before the debt collector or the creditor starts to take steps to sue. That's right. So isn't that really what the purpose of the verification is, not to sort of give blanket suit obligations or rights? I mean, there are still other proceedings within the FDCPA that are allowed. But what it does is it says that this is your opportunity to object. And if they continue to pursue it, then you can sue them if it turns out to be wrong. I would suggest that that particular language about allowing the debt collector to rely is the basis for the exhaustion. But I think the real issue here, Your Honor, is not so much that as whether a validation notice standing alone is debt collection activity. The statute requires that in order for a debt collector to be liable, he must be engaged in debt collection activity. So let's look at your letter. Okay. Quote, a debt collector identifies the author as your client. Is a debt collector attempting to collect a debt? Why isn't that enough for a reasonable, least sophisticated individual, which is our test, to surmise from that that this is an effort in connection with getting payment on a debt? Because that language is statutorily required in the first written communication by a debt collector to a consumer. Whether it's required or not, a consumer would reasonably conclude that it was in connection with debt collection activity because that's what the letter says. Well, except for the fact that I don't believe that the question here is whether the consumer believes it's debt collection activity, but whether it is, in fact, debt collection activity. The purpose of the validation procedure is to benefit the consumer. It's not to benefit Fallon, Allen, and Schmidt. Foreclosure law firms are in quite a quandary under the current set of rulings from the various courts of appeals. First of all, in the Hines case, the Supreme Court said that attorneys who regularly collect debts through litigation are debt collectors, even though that decision did not say it wasn't based on an actual litigation of a case. So that requires the attorneys who are, like Fallon, engaged in foreclosure proceedings, debt collectors, and therefore they feel they must send out the validation notice with the initial communication. But it also says later in the letter, requests for updated reinstatement or payment quotes should be directed to the firm's foreclosure area, the department. That's correct. This isn't something that is a communication that animates the purpose for which, the animating purpose for which is to collect on the debt which comes out in this court's case and sign it. There is absolutely no demand for payment made there. There's not a requirement that there be a demand for payment, right? No, they must further the collection process. Well, what is the purpose of this letter if it's not to further collection? It is statutorily required. That's the reason they send it. What's the purpose of your client's efforts when they send this letter? What is their ultimate goal? To collect the debt, yes. Well, that's the second, sixth, and eleventh circuits have held that foreclosure actions are not under the FDCPA. But you're asking for all kinds of other dollars to be paid, not just the… Have they held this type of letter as not a debt collection activity? That's correct. Well, they've held that foreclosure lawsuits are not debt collection. Foreclosure lawsuits, but… Right. But Heinz says that you're a debt collector and therefore when you make the initial communication, you have to give the magic language and you have to send them a validation notice. And the sixth and seventh circuits have held that… That's correct. There's a common sense inquiry into whether the letter is in furtherance of the debt collection. But if you look at this letter, it says that they've been engaged to file a foreclosure lawsuit. A foreclosure judgment is in rem only. It says that on there as well. And there is no request for payment in cash. And you think an ordinary debtor is going to know what in rem means? Well, I don't know that, Your Honor. I mean, the foreclosure is not… So you're looking at this from the least sophisticated personal standpoint, right? Well, that's correct. It is judged in that matter. But I will say that there is no case in all of jurisprudence that has held that a validation notice standing alone with no overshadowing information is subject to the FDCPA as debt collection activity. And they haven't cited any either. This would be an extreme expansion of law if you were allowed to just take the validation notice and sue. And that's why you also have to look at the actual merits here, Your Honors, because nothing in that letter was false. The letter states that there's no question that Fannie Mae fees were $1,300 and that the estimate of fees of $650 was one-half, which is what was testified to. But where would it tell the recipient in this letter this is an estimate, where the language says the amount of the debt as of May 18, 2010, is as follows? How would a person receiving this think that's an estimate and not the amount due as if it were an invoice? Well, first of all, the person who's receiving it is saying, what this is saying is we're filing a foreclosure complaint and this is what's going to be in the foreclosure complaint. That's why I'm so insistent on arguing here that we're not talking about, please send us a check, because that's not it. What they're saying is we're filing a foreclosure complaint. Here's the debt that's going to be stated in the foreclosure complaint. And I will say the exact same theory was just dismissed by Judge Passoon in the Kmart case down the hall on the basis that you can estimate that there's nothing saying that you can't put in a foreclosure complaint. The fees estimated to be incurred during the course of the proceeding. And as far as the date, because it's the same issue, that the fees from the bank were obtained as a certain date and in the same column they added the attorney's fees. But was that a case where there was an estimate? And if so, was the... It's exactly... I'm sorry, counsel. It's the same thing where they're saying that the attorney's fees were added on a date before they actually were incurred. Did anything in the letter say that was an estimate? Or is it just like this where the word estimate is absent? No, I believe in that case they charged the entire Fannie Mae fee, so it would be $1,300 as opposed to $650. So they charged more, not less. But there was no words of estimate? That's correct. Was the position there that it was an estimate? Well, it wasn't an estimate. Foreclosure fees are statutorily or regulatorily controlled. This is a Fannie Mae mortgage, and in this case they estimated it for the benefit of the consumer because it could have been... At the end of the case, it's $1,300. That's in the supplemental appendix. So you're telling them that if you pay now, you get to pay $650, but if you pay later, it'll be $1,300? No, that's not what it's saying. We estimated at this point to be $650. And by the way, the invoices were attached, and they show that more than that was billed to the client. And those are the subject of the sanctions application? That is, and I'd like to get to that in a minute, Your Honor. But the fact is... I would get to it right now if I were you. All right. You can use your time whenever you want. Okay, I see. I'm running out of time. The sanctions motion came because there was a request for a number of items. And by the way, none of them was class. They didn't take class discovery. There's no motion for class discovery. They just didn't pursue it. So that's not an issue in this case, and they haven't appealed it. The issue is only one that was never raised below, which is whether the 518 date is significant. And if you look at both pleadings, they don't even address that issue. That's new on appeal. Bottom line. Yes. Wasn't any possible notice or due process concern here with the sanctions award cured ultimately by the briefing and by Judge Bassoon's consideration of PHS's arguments? Well, I think that... They had the opportunity to do that downstream. I would argue no, Your Honor, because the evidence was one-sided. I mean, all of the evidence was presented by our side, where we had an affidavit and the communications between the parties, and there was no evidentiary hearing. Is there anything here that the late Judge Lancaster did incorrectly other than simply not to have specifically invoked Rule 37? Well, I mean, nobody made a motion under Rule 37. Nobody made a motion under Rule 11. This isn't viewed as a Rule 11 sua sponte sanction. What it is is that there had been a motion to compel.  If you look at our January 22 letter from Mr. Bernholm sitting at council table, my partner, it says here are the invoices for the backup. In other words, the title fees and everything else. That is what we believed they wanted. As of December 20th, the judge reiterated his rule that the only thing that was going to be at issue was going to be attorney involvement. So at that point, Mr. Collins, former counsel, wasn't interested in getting the attorney invoices, which it had already been testified to that all it's going to say is that it's a fee. That because it's a flat fee, there's no discussion of what the services that were rendered. And there was no request made at any time at that point. The normal thing to do when you get that 22nd letter is to say, hey, you're giving us this, but where are the invoices? There was no request for it. All there was was when we moved for summary judgment, they used it as a basis to get an inference that there was insufficient attorney involvement. And that's all that happened. Then as of the decision, he said, well, you're entitled to summary judgment, but you shouldn't produce these documents, and I'm going to give them the right to seek sanctions. But those documents that were produced as part of your opposition, a reply in summary judgment? Once they raised that as an issue, we said, here, have the documents. You didn't ask for them after the clarification order, but it doesn't show anything, and it doesn't. What all of the documents that were attached show is that all the fees were warranted under the mortgage and note, that the fees were backed up. In fact, the fees were greater than those that were estimated in the validation notice. That's why they moved on to theory number three, which is that rather than having not incurred these fees as of the time of the sending of the notice, it's the 518 date on there. And if you look at their two issues on appeal, that's it. That's all they're raising on this appeal. And I would just ask that would that have had any material effect whatsoever? And materiality, I think, should be addressed here, because it would make no difference that the date was 518 as opposed to 6-7 when they had, in fact, been incurred. What would they have done differently? What would the least sophisticated consumer have had the right to do? Thank you very much. Thank you, Mr. Bartlett. We'll have Mr. Eckert back in a moment. Your Honors, with regard to the debt collection nature of this letter, I think the only thing that I have to say is an individual who receives this letter is going to think he or she will lose his house if he or she doesn't make a payment. And I think that's enough of a basis for this case to proceed to trial on that issue. With regard to the issue of harm that Judge Smith asked me about, this case never proceeded to discovery once we received the invoices. We have no idea how to That was your answer to my question back in your initial presentation. Yes, and I just wanted to develop that answer a little bit more. All right. We have no idea how the letter was developed vis-à-vis the invoices. And Mr. Bart just said that there is no harm. But there's a two-pronged purpose of the FDCPA. It's, one, to protect consumers. It's also to protect other debt collectors who follow the rules. And PHS, if it's saying that the amount of the debt as of 5-18 is this amount, and it starts to accrue interest from 5-18 through June 7, it's unjustly enriched by a tremendous amount multiplied by the number of letters it's sending out. And the only way that the FDCPA can be enforced is by a lawsuit like this. That's why the FDCPA has statutory remedies in the absence of actual harm. And I'm not saying that there is an absence of actual harm. There was no discovery on that fact. But there's statutory remedies, there's liquidated damages, and there are attorneys' fees. And there are cases that say that those remedies exist for the purpose of encouraging attorneys to take on cases and to vindicate the rights of debtors who are subject to abusive debt collection practices and to stop these kinds of practices. So that's precisely why the date matters, because of interest and also because of just the language. It's a violation. With regard to the case that Mr. Bart referred to down the hall from Mr. Bassoon, I have not read that case, but I believe, just as a point of clarification, I believe Mr. Bart said that that was a foreclosure action. I think he might have been referring to a complaint, not a letter. And I think there's a distinction between allegations made in a complaint. Without having the benefit of reading that case, I would just suggest that that might be a point of distinction between that case and this case. Mr. Bart also said that class discovery, that we never sought class discovery. That's simply not true. We sought class discovery, and Judge Lancaster declined our request, and we specifically did ask for this case to be remanded for class discovery and to proceed to trial in this matter going forward on the 1692E claims. In that regard, I would just also refer the Court to its prior ruling in Rosenau v. Unifund, and in that case, the Court specifically noted that 1692E has its introductory paragraph and then 16 enumerated subparagraphs, and in the Rosenau case, the Court said that there's no need for a plaintiff to enumerate its claim under the 16 paragraphs because of the introductory paragraph. So for that reason, we just ask that this case be remanded for class discovery and trial under 1692E. Thank you. Thank you very much, Mr. Rector. Mr. Bart, we thank both your counsel for very helpful arguments. We'll take this matter under advisement, and we will ask the Clerk to adjourn the proceedings. Thank you.